STATE EX REL. EDWARD HINES LUMBER COMPANY, Respond-
ent, vs. FISHER, City Clerk, Appellant.

*May 9—June 21, 1906.*

*Taxation: Board of review: Increase of assessment: Jurisdictional
errors: Judicial review: Evidence: Logs and lumber.*

1. Judicial review of the action of a board of review in increasing an
   assessment extends only to the correction of jurisdictional er-
   rors, not mere errors of judgment as to the preponderance of
   the evidence.
2. Where the board of review had jurisdiction of the subject matter
   of increasing an assessment, and in making the increase acted
   upon evidence which, in any reasonable view thereof, justified
   its decision, it did not commit any jurisdictional error.
3. In this case the decision of the board of review, in increasing the
   amount assessed to a corporation upon logs and lumber, is *held*
   to be warranted by evidence as to their value and showing that
   portions of the lumber, claimed to have been sold prior to May
   1, remained in possession of the corporation as agent and were
   therefore assessable to it under sec. 1044, Stats. 1898.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an appeal from a judgment in *certiorari* proceed-
ings to review the action of the board of review of the city of
Ashland.

The evidence appearing by the record in substance and ef-
fect is as follows:

For the year 1903 the assessor of the city of Ashland as-
sessed to respondent as its property in such city liable to tax-
ation on the 1st day of May of that year:

| | |
|---|---:|
| 18,145,000 feet of lumber valued at .................. | $255,956 00 |
| 18,000,000 feet of logs  "   " .................. | 144,000 00 |
| 7,925,000 pieces of lath  "   " .................. | 11,581 00 |
| Boom sticks  "   " .................. | 1,200 00 |
| Total ...................................... | $412,737 00 |

September 16, 1903, respondent applied to the board of
review of said city for a reduction of such assessment, claim-

ing the same to be excessive both as to the amount of property and rate of valuation. In support thereof it made proof that of the lumber and lath so assessed and which was in fact in the lumber yard and on the docks used by it May 1, 1903, it theretofore sold and passed the title to 4,775,000 feet to White River Lumber Company for the sum of $65,815.50 and sold and passed title to 5,700,502 feet to John E. Burns Lumber Company for $95,687.56; that the total amount of lumber on the docks and in the yard was 17,600,000 feet, leaving 7,124,500 feet unsold; that the amount of its logs at the time aforesaid was 9,957,089 feet; that there were no boom sticks, and that of the total value of lath, $11,581, $5,820 was included in the two sales aforesaid, leaving on hand lath of the value of $5,761. There was evidence that the logs were worth $8 per thousand feet. It was conceded that the unsold lumber was worth on the average $14.11 per thousand, or $100,519.64. There was further evidence showing or tending to show that the entire amount of logs delivered in Ashland during the preceding logging season, the property of respondent, was 19,885,140 feet, out of which lumber was manufactured prior to May 1, 1903, to the amount of 9,928,051 feet. Upon such state of the case the assessment was reduced by the board of review as follows:

| | |
|---|---:|
| 7,124,500 feet of lumber | $100,533 00 |
| 9,957,089 feet of logs | 79,656 00 |
| Lath | 5,761 00 |
| Total | $185,950 00 |

In this it was assumed that the lumber corresponded in feet to an equivalent in log scale.

Proceedings were thereafter had before the board of review to determine whether the lumber thus omitted from the assessment should be assessed to the owner of the yard and docks where the same was located on the 1st day of May, 1903, because of such owner being in possession of the property as agent. Numerous witnesses were sworn and gave tes–

timony, including the owner of the dock, the proprietors, or
some of them, of the mill where the lumber was sawed, the
person who attended to shipping the lumber, sold as afore-
said, subsequent to May 1, 1903, and the manager of the
respondent's business at Ashland. The evidence tended to
show that the sold lumber was on the docks and in the yards
at Ashland on May 1, 1903, the same as when it was sold a
few days prior thereto; that no change occurred between the
time of the sale and such 1st day of May, except the piles of
lumber sold were appropriately marked. The yards and docks
were under the absolute control of respondent. It permitted
the owners of the sold lumber to leave the same there till such
time as they desired to ship the property to the trade. Re-
spondent exercised exclusive control over the docks after the
sale and as before. It informed parties under orders to load
any of the lumber where it was located. When lumber was
shipped out, the person having charge of the inspection and
shipment after doing his work reported to respondent. The
respondent resold a considerable portion of the lumber.. The
persons who manufactured the lumber and owned the yards
and docks did not have anything to do with the lumber after
the sawing was done and the product was piled in the yards.
The owners of the docks gave respondent full control thereof
and it exercised such control. The lumber scale usually over-
ran the log scale from twenty to thirty-three per cent.

As a result of such showing the board adopted a resolution
to the effect that it was intended to increase the assessment of
property to respondent to the following: $256,216.81 on lum-
ber; $103,056 on logs; $11,581 on lath; making in all
$370,853.81; and that written notice thereof should be served
on respondent specifying a time and place for it to appear
and show cause, if any existed, why such increase should not
be made. Notice was given accordingly. In due time it ap-
peared before the board by its attorney and manager and sub-
mitted to further proceedings in regard to the assessment with

the understanding that all evidence taken prior thereto should be considered. The condition was tacitly agreed to and the hearing proceeded. The new evidence given was substantially all by respondent's manager. He testified, in effect, that for the sawing season previous to the one during which the lumber in question was manufactured the lumber scale did not overrun the log scale; that after the lumber described in the bills of sale was sold, respondent did not do anything therewith unless requested to, and that the witness did not himself know of any request being made; that respondent would have changed numbers on piles of lumber if requested to do so by the owners, but that no such request was made. The testimony before given that the docks and piling yards where the lumber was located were under control of respondent and that it gave the necessary directions to the estimator and shipper when the lumber was moved was not denied.

At the close of the testimony the assessment of property to respondent was raised in accordance with the previously declared intention. A writ of *certiorari* was thereupon sued out of the circuit court for Ashland county to review such action. The hearing in such court resulted in a decision that such action was without evidence, and contrary to evidence submitted by the relator, and without jurisdiction. From the judgment accordingly entered this appeal was taken.

*F. J. Colignon,* for the appellant.

For the respondent the cause was submitted on the brief of *Lamoreux & Shea.*

MARSHALL, J. The law is too well settled to warrant more being said in respect thereto than to suggest that if the board of review had jurisdiction of the subject matter, by having taken the proper proceedings to justify considering the matter of whether the assessment of property to the respondent should be increased, and if, in making the increase, it acted on evidence which in any reasonable view thereof justified

its decision, it did not commit any jurisdictional error and the judgment of the trial court reversing its action is erroneous. It was not competent for such court to weigh the evidence upon which the board acted and determine the matter in controversy according to the judicial idea of the preponderance of such evidence. The judicial review, as indicated, only extended to correcting jurisdictional errors. That did not include, of course, mere errors of judgment as to the preponderance of the evidence. *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188; *State ex rel. Vilas v. Wharton,* 117 Wis. 558, 94 N. W. 359; *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *State ex rel. J. S. Stearns L. Co. v. Fisher,* 124 Wis. 271, 102 N. W. 566.

There is no question raised but what the board had jurisdiction of the subject matter of reviewing the assessment. Therefore, if it committed jurisdictional error in reaching a determination it was by acting without any credible evidence warranting the same. As we look at the record, the substance of which is fairly epitomized in the statement, it seems that the learned trial court could not have reached the result now complained of, fully appreciating the narrow scope of its proper view as before indicated. If it were not for the statement in the court's decision that the determination of the board was not only contrary to the evidence but without jurisdiction, we could not well escape the conclusion that it was supposed that a review of the evidence and a decision in accordance with the preponderance thereof was permissible. Looking at the court's conclusion and the evidence, it seems that either it did not have the latter clearly in mind when the former was pronounced, or, mistaking the law, it came to a conclusion by weighing the evidence and determining the preponderance thereof, and then made the further mistake of signing a decision prepared by counsel, consistent with the view that there was no credible evidence warranting the action of the board.

What has been said, it seems, is amply borne out by the statement preceding this opinion. The amount of logs as at first assessed was determined by deducting the lumber scale from the log scale, on the theory that the one would only be equivalent to the other. The scale of respondent's logs which it attempted to account for in lumber on hand, sold and unsold, and logs was 19,885,140 feet. The amount of lumber manufactured therefrom prior to the 1st day of May, 1903, was 9,928,051 feet. The latter being deducted from the former left 9,957,089 feet, which was taken in the first instance as the amount of logs on hand on the 1st day of May, 1903. Such amount was accordingly assessed to respondent at $8 a thousand, there being testimony that they were worth that amount. That made the value of the logs $79,656.71. When the board came to the final conclusion there was proof before it that saw logs, customarily, yield from twenty to thirty-three per cent. more board measure in lumber than the log scale. Manifestly it was competent for the board to regard that evidence as credible and to determine the amount of respondent's logs on the 1st day of May, 1903, accordingly, which appears to have been done. That accounts fully for the increase in the assessment for logs over the original $79,656.71.

There was ample evidence to warrant the board in coming to the conclusion that the lumber included in the two sales made shortly before May 1, 1903, on that date was still in respondent's possession as agent for the owners and therefore was assessable to it. We will not here recite the evidence on this point. It is sufficiently shown by the statement. If the so-called sold lumber was in respondent's possession as agent on the 1st day of May, 1903, it was assessable to it the same as if it were then the owner. Sec. 1044, Stats. 1898. It seems quite plain that the board, regarding the law as stated, and properly believing from the evidence that respondent, May 1, 1903, was in possession of the lumber as agent, assessed the

.same to it, and not upon the theory suggested in the brief .of respondent's counsel that the bills of sale were fictitious. The lumber wás valued by the board at the price for which the same was sold. The evidence of actual sale price of the lumber, supported as it was by evidence showing that the lumber was well worth such sale price, amply warranted the board in taking such price as the fair assessable value. What has been said with reference to the lumber of course includes the lath, and thus the entire action of the board is fully justified so far as any jurisdictional error is concerned.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to affirm the decision of the board of review.