COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1584**

Cir. Ct. No. **2017CV1899**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

HANNING REGENCY LLC,

PETITIONER-APPELLANT,

V.

TOWN OF BROOKFIELD BOARD OF REVIEW,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: WILLIAM DOMINA, Judge. *Reversed and cause remanded*.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶1    HAGEDORN, J.    Hanning Regency LLC asserts that the Town of Brookfield Board of Review improperly disregarded the statutory standard for real property valuations when it sustained an assessor's valuations that were nearly twice the amount of a recent arm's-length purchase of two properties.  We agree

and reverse the circuit court's decision to deny Hanning's certiorari challenge and remand for further proceedings.

¶2    For tax assessment purposes real property valuations are governed by WIS. STAT. § 70.32(1) (2017-18),[1] which provides:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under [WIS. STAT. §] 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.  In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

¶3    The statute's second sentence is a codification of an assessment hierarchy that was developed under common law.  *See **State ex rel. Campbell v. Township of Delavan***, 210 Wis. 2d 239, 256-57 & n.5, 565 N.W.2d 209 (Ct. App. 1997) (citing ***State ex rel. Markarian v. City of Cudahy***, 45 Wis. 2d 683, 686, 173 N.W.2d 627 (1970)).  Often cited for its articulation in ***Markarian***, the hierarchy broadly recognizes that a property's "full value" is best determined with consideration of three sources—or "tiers"—of information:  an arm's-length sale of the subject property, recent arm's-length sales of reasonably comparable properties, and all other factors that collectively have a bearing on the property's value.  ***Metropolitan Assocs. v. City of Milwaukee***, 2018 WI 4, ¶¶31-34, 379 Wis. 2d 141, 905 N.W.2d 784 (citing ***Markarian***, 45 Wis. 2d at 686).

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version.

¶4      Simply reading the statute might lead one to think that assessors should gather all three tiers of information, consider them, and then make a determination.  As explained further below, the assessor and Board here thought precisely that.  But our cases are clear—and we are bound to follow them—this "consider everything together" approach is not the law.  Instead, the hierarchy's three tiers must be considered in order.  You do not get to tier two if tier one information is available, and you do not get to tier three if tier two (or tier one) information is available.  *See* **Metropolitan Assocs.**, 379 Wis. 2d 141, ¶¶31-34; **Great Lakes Quick Lube, LP v. City of Milwaukee**, 2011 WI App 7, ¶¶17-18, 331 Wis. 2d 137, 794 N.W.2d 510 (2010).  Failure to follow this hierarchy structure "constitutes an error of law."  **Campbell**, 210 Wis. 2d at 259.  And that is what occurred here.[2]

¶5      In August 2016, Hanning purchased two commercial office buildings for a combined price of $875,000.  In 2017, the Town of Brookfield reassessed the properties for tax purposes, concluding that their respective values were $884,600 and $768,500, or a combined total of $1,653,100.  Hanning objected to the valuations, and the Board held a hearing.  At the conclusion of the hearing, the Board sustained the assessor's valuations, finding that Hanning had not overcome the presumption of correctness accorded to the assessor.  WIS. STAT.

---

[2] Our inquiry into whether an assessment was made on the correct legal basis gives rise to a question of law, which we consider independently.  **State ex rel. Geipel v. City of Milwaukee**, 68 Wis. 2d 726, 732, 229 N.W.2d 585 (1975).

§ 70.47(8)(i). Hanning now appeals from the dismissal of its certiorari challenge to that decision.[3]

¶6      On appeal from a certiorari order, we review the decision of the Board to determine whether (1) it kept within its jurisdiction; (2) it proceeded on a correct theory of law; (3) its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) the evidence was such that it might reasonably make the order or determination in question. *Sausen v. Town of Black Creek Bd. of Review*, 2014 WI 9, ¶6, 352 Wis. 2d 576, 843 N.W.2d 39.

¶7      Hanning asserts that the Board disregarded the hierarchy under WIS. STAT. § 70.32(1) by sustaining the assessor's valuations based on his use of an income-approach methodology—a tier three consideration[4]—notwithstanding its conclusion that the properties were purchased at arm's length.

¶8      While the hearing transcript is not a model of clarity, our best reading of the proceedings below leads us to conclude that both the assessor and the Board failed to adhere to the statutory hierarchy in the assessment of Hanning's properties.

---

[3] In response to Hanning's appeal, the Board argues that the certiorari action should have been dismissed because of Hanning's failure to comply with WIS. STAT. § 70.47(7)(af). That statute requires provision of certain property information to the assessor before an individual may object to a valuation based on the assessor's use of an income-approach methodology, as was used by the assessor here. *Id.* The circuit court rejected the Board's argument because, notwithstanding Hanning's noncompliance with the statute, the Board heard the objection and was not prejudiced in so doing. We see no error in that decision and will consider the merits here.

[4] In general terms, use of the income approach seeks to assess a property's fair market value by "captur[ing] the amount of income the property will generate over its useful life." *Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶35, 294 Wis. 2d 441, 717 N.W.2d 803; *see also* 1 Department of Revenue, *Wisconsin Property Assessment Manual* at 9-22, 9-36 to 9-38 (2019).

¶9 At the hearing, the property owner spoke about the details of Hanning's purchase, as well as his belief that the sale constituted an arm's-length transaction. The owner proposed alternative valuations of the properties that, combined, matched the purchase price of $875,000.

¶10 Then the assessor spoke in support of his assessments, noting first that the purchase price was considered and the sale appeared to be at arm's length. Even so, he stated that he did not "necessarily have to accept that sale as an absolute in the assessment of a property" because "sales have a range and … one sale does not make a market." Consistent with that theory, the assessor proceeded to explain that he found no recent sales of comparable properties and used income and expense statements to determine "how this property would customarily sell"— i.e., analysis under tiers two and three.

¶11 The assessor's testimony suggests he understood the statute to allow for unchecked consideration of all three hierarchy tiers when assessing a property. To that point, the assessor recited WIS. STAT. § 70.32(1) and stated, "what I read is that the sale is certainly an indicator, but if there is other information garnered from sales or from information that would lead to probable calculation of the sale price, we should consider that as well." Or, as he later said in other words, a sale "should be heavily considered" even though it "is not the sole opinion of value that the assessor should follow."

¶12 When questioned about the statutory hierarchy, the assessor responded that "the amendment to [WIS. STAT. § 70.32(1)] changes that *Markarian* hierarchy.… It talks about reasonably comparable property while applying professionally acceptable appraisal practices." This interpretation is squarely at odds with this court's previous explanation that the amendment

5

codifying the hierarchy made no changes to a structure that had been "clearly and unambiguously outlined" in **Markarian**. *See Campbell*, 210 Wis. 2d at 255-59 (addressing 1991 Wis. Act 39, § 1722).[5]

¶13      This incorrect application of the law seems to have carried over to the Board's deliberation as well.   Following the assessor's lead, the Board proceeded to work its way through all three hierarchy tiers before deferring to the assessor's income-approach analysis.  Like the assessor, the Board first recognized that Hanning's purchase of the properties was an arm's-length sale as "best we can tell."   The Board chairman then asked whether that conclusion "support[ed] the assessment," before he enunciated the other members' answers of "yes/yes/no/no." The transcript shows the Board proceeding immediately to consideration of sales of reasonably comparable properties (tier two) and then, once no such sales were found, other factors that established the properties' value (tier three).  It was at that

---

[5] We recognize arguments may still exist as to the effect of the statutory language that arm's-length sales are only to be considered "*if* according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property." WIS. STAT. § 70.32(1) (emphasis added).  Notably, that statutory language—which came into effect with the 1991 amendment—seems to embrace explanations in earlier case law that, when considering tier one of the assessment hierarchy under § 70.32(1), the mere claim of an arm's-length sale does not foreclose further investigation into the nature of that transaction. **Flood v. Lomira, Bd. of Review**, 153 Wis. 2d 428, 437-41, 451 N.W.2d 422 (1990).  Rather, "an assessor must consider all factors relevant to the sale when determining whether the sale price resulted from an arm's-length transaction and is the best information of full value." **Id.** (explaining it is the taxpayer's burden to establish a sale was made at arm's length).  Likewise, the *Property Assessment Manual* sets forth conditions defining "market value," and thus highlights the ways in which a sale can be investigated to ensure it was truly at arm's length.  *Property Assessment Manual* at 9-7, 9-8; *see also* **Walgreen Co. v. City of Madison**, 2008 WI 80, ¶3, 311 Wis. 2d 158, 752 N.W.2d 687 (affirming that § 70.32(1) requires adherence to the *Manual* absent conflicting law).  Given that the record does not show the Board based its decision on considerations of this kind, but rather made its determination on an incorrect legal basis, we need not consider these issues here.

stage that the Board determined the assessment should be based on the assessor's analysis showing the properties' income-generating capacity.

¶14     Thus, in its entirety, the Board's decision appears to have been based on a mistaken belief that it was not restrained in its ability to consider information under all three tiers of the statutory hierarchy. As shown above, this conclusion is supported by the assessor's claims that every tier should be considered, and tier three information (i.e., income-approach analysis) could be used to override tier one information.  On appeal, the Board explicitly makes this argument, maintaining that consideration of all three tiers *must* take place given the text of WIS. STAT. § 70.32(1).  The Board's legal arguments before us lend further support to our reading of the transcript that the assessor and Board did precisely that.

¶15     But as we have previously explained, this approach conflicts with how our cases have interpreted WIS. STAT. § 70.32(1), and the failure to adhere to the hierarchy structure constitutes an error of law. *Campbell*, 210 Wis. 2d at 259. Because the Board proceeded on an incorrect theory of law, we reverse the circuit court's decision and remand for further proceedings so that the proper legal standard may be applied.[6]

*By the Court.*—Order reversed and cause remanded.

Not recommended for publication in the official reports.

---

[6] Because we conclude that the Board proceeded on an incorrect theory of law and remand the case for further proceedings, we need not address Hanning's argument that, regardless of the method used, the assessor's valuations were arbitrary.